In the Matter of MARK T. COSTANTINO (Admitted as MARK THOMAS COSTANTINO), an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE SECOND AND ELEVENTH JUDICIAL DISTRICTS, Petitioner.

Second Department, March 5, 1984

**APPEARANCES OF COUNSEL**

*Frank A. Finnerty, Jr.,* for petitioner.
*Nathan R. Sobel* for respondent.

**OPINION OF THE COURT**

*Per Curiam.*

The respondent was admitted to practice by this court on March 10, 1971 under the name of Mark Thomas Costantino. In this proceeding to discipline the respondent for professional misconduct, the petitioner moves to confirm the special referee's report and respondent cross-moves to confirm in part and disaffirm in part said report.

Paragraphs a, b, d, and e of charge 1 of the petition allege in part, that respondent facilitated the cashing of three separate checks totaling approximately $24,000 payable to Mahmut Peric by coindorsing and depositing said checks in his "attorney special account" and, thereafter, by delivering the funds to Kabil Bajramovic or drawing checks on his

special account payable directly to Kabil Bajramovic. None of the funds were delivered to or received by Mahmut Peric. Paragraph c alleges that to induce a bank to redeem $15,770 in bonds payable to Mahmut Peric respondent misrepresented to the bank that he represented Mahmut Peric and that Peric was very ill and in need of immediate cash. Paragraph f alleges that respondent "grossly" failed to protect the interests of Mahmut Peric by facilitating, aiding and abetting in the conversion of funds payable specifically to Peric by initially misrepresenting to others that he was Peric's attorney, and by thereafter concealing from Peric and others the misappropriation of funds notwithstanding his retainer as attorney in fact by Peric in October, 1975. With respect to the allegations in charge 1, the special referee sustained only so much of paragraph c as alleged that respondent falsely advised a bank that "he represented Mahmut Peric, and that Peric was very ill and in need of immediate cash".

The special referee sustained charge 2 which alleged that respondent issued 28 personal checks in a seven-month period knowing that his account had insufficient funds to cover the checks.

Charge 3 was not sustained by the special referee.

Charge 4 alleged that respondent failed to reply to numerous requests by the Clerk of the Justice Court of Mineola that respondent appear in that court. Respondent admitted his failure to reply and the special referee sustained the charge.

As to charge 5, the special referee sustained an allegation that respondent failed to file an application for a liquor license for a client, a charge admitted by respondent.

Charge 6 alleged that respondent was paid a retainer fee to commence a divorce action but failed to undertake any legal action or to return the fee. Respondent admitted this charge and the special referee sustained it.

The special referee found, as to charge 7, that respondent failed to communicate with his client and with the United States Court of Appeals, said neglect resulting in the dismissal of a criminal appeal.

Charge 8 alleged respondent's failure to co-operate with the Grievance Committee in its investigation of a com-

plaint against the respondent. Although the evidence indicated that the underlying complaint had been withdrawn, the special referee sustained the charge on the premise that respondent should have answered the communications of the grievance committee.

Charge 9 alleged that respondent accepted a retainer fee, neglected the client's action, failed to respond to the client's inquiries, and failed to return the fee for a period of time. Respondent admitted the charge and the special referee sustained said charge.

The special referee sustained that part of charge 10 which alleged that respondent neglected to make a settlement payment for more than six months.

Charge 11 alleged that respondent, after receiving a retainer fee from a client to defend a divorce action, neglected to undertake any legal action on her behalf or to return the fee for several months. Respondent admitted the charge and the special referee sustained it.

As to charge 12, the special referee sustained allegations that respondent issued several checks, knowing that there were insufficient funds in his account, and the checks were dishonored.

Charge 13 alleged that respondent gave a client fictitious telephone numbers and addresses where he could be reached, while she remained incarcerated on pending criminal charges. The special referee sustained this charge based on respondent's testimony.

Charge 14 alleged that respondent moved his office, neglected to inform his clients of his new location, and left no forwarding address or telephone number. Respondent admitted this charge and the special referee sustained it.

After reviewing all of the evidence we are in agreement with the findings of the special referee except his failure to sustain the charges contained in paragraphs a, b, d, e and f of charge 1. Although the Grievance Committee does not take issue with the special referee's findings, we are satisfied that the allegations in paragraphs a, b, d and e, so much of the allegations in paragraph c that the special referee had sustained, and so much of paragraph f as alleged that respondent grossly failed to protect the interests of Mahmut Peric by facilitating in the conversion of

funds payable specifically to Peric by initially misrepresenting to others that he was Peric's attorney should be sustained. Accordingly, the petitioner's motion to confirm the special referee's report is granted, with the exception of the modification noted above as to charge 1, and respondent's cross motion to confirm in part and disaffirm in part is denied to the extent that he seeks to disaffirm the report and confirm the report as to certain of the allegations in charge 1 and is otherwise granted.

In sustaining the allegations in charge 1, we note that there is no direct evidence in the record that respondent knew that any of the checks payable to and purportedly indorsed by Mahmut Peric, which he negotiated, had been forged by Peric's son-in-law, Kabil Bajramovic. Respondent negotiated the checks and facilitated the redemption of the bonds payable to Peric as an accommodation to Bajramovic, a former client whom he had represented on a violation of probation for a forgery conviction. Bajramovic had also acted on one occasion as an interpreter for a client of a law firm with which respondent was an associate and had subsequently referred several clients to respondent. Prior to presenting the first check to respondent, Bajramovic had informed him that his father-in-law had encountered difficulties in obtaining his inheritance from his deceased's brother's estate in Canada. On said occasion, Bajramovic telephoned the Canadian solicitor from respondent's office and was advised that the money would be forthcoming in the near future. Respondent offered to assist Peric, should the need arise in the future. Thereafter, Bajramovic presented respondent with the forged checks and bonds and misrepresented to respondent that Peric was ill and had no bank account. Bajramovic led respondent to erroneously assume that he was authorized by his father-in-law, who was not conversant in the English language, to redeem the bonds and to cash the checks, which were part of the distributions from the estate of Peric's deceased brother. Respondent, due to his negligent failure to confirm Bajramovic's authorization and the genuineness of Peric's purported signature, naively served as a conduit for the misappropriation of said funds by Bajramovic.

In determining an appropriate measure of discipline, we take cognizance of the fact that the record indicates that respondent did not intentionally misappropriate funds belonging to Mahmut Peric nor did he either receive any of Peric's money or profit from the transaction, despite his extreme financial difficulties. We are mindful also, by way of mitigation, that upon the filing of charges, respondent acted responsibly in voluntarily giving up the practice of law and that the hospitalization of respondent's 2½-month-old baby for a heart condition imposed severe emotional and financial demands upon him. Said demands account, in part, for the neglectful manner in which he handled his client's cases, failed to timely return unearned fees and issued checks on his overdrawn attorney's account. Insofar as relevant with regard to the other sustained charges, these mitigating factors have been taken into consideration.

Under all of the circumstances here present, including, on the one hand, the serious nature of some of the charges sustained and, on the other hand, the mitigating factors mentioned above, we conclude that respondent should be and he hereby is suspended from the practice of law for a period of five years, effective April 2, 1984, and until the further order of this court.

O'CONNOR, J. P., BROWN, NIEHOFF, RUBIN and BOYERS, JJ., concur.